IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MARK ADAMS, AV SELECT
INVESTMENTS, LLC, DR. GREGORY
SIMONIAN, WADE HARTMAN, and
FRANK EDWARD SMITH,

            Plaintiffs,

     v.

JOHN H. KLEIN,

          Defendant.

Civil Action No. 18-1330-RGA

## MEMORANDUM ORDER

Before me is Plaintiffs' Motion for Partial Summary Judgment. (D.I. 120). Plaintiffs seek partial summary judgment on the material misstatement/omission and scienter/state of mind elements of their claims for federal securities fraud and related state law claims under Section 10(b) of the Securities and Exchange Act and Rule 10b-5 thereunder (Count I) and the New Jersey Uniform Securities Act (N.J.S.A. 49:3-52) (Count II), common law fraud/intentional misrepresentation (Count III), and negligent misrepresentation[1] (Count IV) of the First Amended Complaint.[2] (*Id.*).

I have reviewed the parties' briefing (D.I. 122, 138, 145). For the reasons that follow, I will deny Plaintiffs' Motion for Partial Summary Judgment. (D.I. 120).

---

[1] For negligent misrepresentation, Plaintiffs seek summary judgment only on the material misstatement and omission element. A state of mind such as scienter is not an element of this claim.

[2] The First Amended Complaint is at D.I. 74. It also contains Count V (unjust enrichment) and Count VI (breach of contract in relation to Dr. Simonian). Counts V and VI are not at issue in this motion.

## I.     BACKGROUND

The allegations of Counts I through IV are essentially the same for each count.  Each count alleges multiple misrepresentations and material omissions by Defendant Klein in connection with Plaintiffs' investments in CTT.  A representative sampling of these include: (1) He lied about his background; (2) He misrepresented that he was the sole shareholder of CTT; (3) He falsely stated that he had previously turned down an offer in excess of $25 million for CTT; (4) He lied about the current state of CTT's business; (5) He misrepresented profit projections for 2015 and 2016; (6) He misrepresented to Plaintiff Adams that CTT had an approved NDA; (7) He misrepresented to Plaintiff Dr. Simonian that CTT had 80 products that were nearly commercialized; (8) He misrepresented to Mssrs. Hartman and Smith that CTT had a network of 1500 salespeople; and (9) He omitted to tell any Plaintiffs that their investments were mostly being used to pay off earlier investors and for Klein's personal financial needs.  Essentially, Plaintiffs now seek "partial summary judgment" on items 2 and 9 on this list.

Plaintiffs submitted voluminous materials (2670 pages, according to Defendant (D.I. 138 at 1)) in connection with their partial summary judgment motion.  Klein submitted a two-page declaration in response. (D.I. 139-1).  It contained five relevant sentences.  As to item 2, he said, "When each of the Plaintiffs purchased an interest in CTT, that interest was a purchase of a portion of my interest in CTT.  At no point in connection with any of the Plaintiffs' purchases of their interests in CTT did CTT issue any new interests, or sell any interest to any of the Plaintiffs.  Adams purchased a 3% interest in CTT, not 6% as suggested in his papers."  (*Id*. (cleaned up)).  The two other sentences stated that Adams sought a salary increase in 2017, but was refused by Klein, who told Adams that both he and his son did substandard work and were at risk of adverse employment consequences.

2

Defendant's briefing does not contest that the item 2 "Sole Member Representations" were made, and that they were false, but he argues that they have not been shown to be undisputedly material.  (D.I. 138 at 3).

### A.   Solicitation and Use of Plaintiffs' Investments

Plaintiff Adams met Defendant in June 2014. (D.I. 123-1, Ex. 7 at 38:17-19). Defendant told Adams that his funds would be wired into a CTT bank account and shown to a potential funder on a balance sheet and that his funds would be used to develop drugs and pay for New Drug Applications. (*Id*. at 49-51, 58; D.I. 126, Ex. 22). Defendant represented to Adams that he was CTT's sole shareholder. (D.I. 123-1, Ex. 7 at 49-50). On October 16, 2014, Adams wired $581,250 to CTT's account at PNC Bank ("the 5904 Account") in exchange for 6% of CTT.[3] (*Id.*, Ex. 8, at Adams CTT 0071589).[4] Over the next month, Defendant disbursed two checks of $100,000 to himself from the account, along with a check of $134,733.29 to American Express, two checks of $50,000 and $10,000 to early investor Patrick Dapuzzo, a $124,000 check to early investor Steven Shaw, and a check of $39,718 to the Borough of Alpine, New Jersey. (*Id.*, Ex. 8 at Adams CTT 0071589-99).

Plaintiff AV Select is a limited liability company comprised of the Estate of Robert Ashton, Jennifer Ashton, Greg Vorbach, Nancy Vorbach, and their children. (*Id.*, Ex. 9). AV Select was organized for the purpose of investing in CTT. (*Id.*, Ex. 10). After Defendant met with Robert Ashton, on January 26, 2015, AV Select wired $450,000 to the 5904 Account in exchange for 3% of CTT shares. (*Id.*). Over the next month, Defendant disbursed two checks of

---

[3] Based on Defendant's declaration, it appears that whether Plaintiff Adams was obtaining 3% or 6% is a disputed fact, but it is not material.

[4] Exhibit 8 is a document prepared by Adams in his capacity as CTT's acting CEO from records obtained from PNC Bank. This document includes a compilation of bank statements, cancelled checks, and wire instructions for the years 2011-2016 for the 5904 Account.

$10,000 to Dapuzzo from the account, along with checks of $127,174.63 and $13,429.99 to American Express, a check of $100,000 to himself, a check to the Borough of Alpine for $39,718, and he made two cash withdrawals of $8,500 and $6,000. (*Id.*, Ex. 8, at Adams CTT 0071624-640).

Plaintiff Simonian is a vascular surgeon who met Defendant in June 2014. (D.I. 122 at 6). Defendant told Simonian that his funds would go to CTT's drug inventory, marketing, packaging, and product stability, and that any profits would be reinvested in CTT. (D.I. 124, Ex. 11 at 140-46). Defendant represented to Simonian that he was CTT's sole Shareholder, inviting to bring him in as a co-founder. (D.I. 127, Ex. 33). On August 10, 2015, Simonian wired $600,000 to the 5904 Account in exchange for 3% of CTT, with an option to purchase an additional 3% of CTT and a right of first refusal to purchase additional shares if Defendant solicited further investments. (D.I. 123-1, Ex. 8 at Adams CTT 0071642-44). Over the next six weeks, Defendant disbursed checks to himself in the amounts of $300,000, $100,000, and $22,000; a $46,000 check for a summer rental in East Hampton, NY; three checks totaling $15,000 for a rental apartment; and checks of $15,000 and $25,000 to Dapuzzo. (*Id.*, at Adams CTT 0071641-655).

Plaintiffs Hartman and Smith are executives of Keystone Folding Box Co., which provided packaging for CTT's Compliance PACs. (D.I. 125, Ex. 14 at 11, 25; Ex. 15 at 13, 20). Defendant told Hartman that his funds would go toward purchasing drugs and ramping up CTT's outside sales force. (*Id.*, Ex. 14 at 122-26). Defendant represented to Hartman and Smith that he was CTT's sole shareholder. (*Id.*, Ex. 14 at 48, 84; Ex. 15 at 41; D.I. 126, Exs. 16-17). On November 9, 2015, Hartman wired $300,000 to the 5904 Account in exchange for 1.5% of CTT. (D.I. 125, Ex. 14 at 140; D.I. 123-1, Ex. 8 at Adams CTT 0071587). On December 11, 2015,

Smith wired $100,000 to the 5904 Account in exchange for .5% of CTT. (D.I. 125, Ex. 15 at 102; D.I. 123-1, Ex. 8 at Adams CTT 0071587 Over the next two weeks, Defendant disbursed checks to himself in the amounts of $50,000 and $100,000, a $42,319.28 check to American Express, a $42,460.98 check to the Borough of Alpine, and checks of $45,000 each to early investors Michael Rosenberg and Jeffrey Khalaf. (*Id.*, Ex. 8, at Adams CTT 0071656-668).

### B.  Product Investors and Associated Liabilities

Prior to his interactions with Plaintiffs, Defendant obtained approximately $6 million from various investors into CTT's purported business of developing New Drug Application multi-drug combination products ("NDA Products"). (D.I. 126, Ex. 23 at 55-75, 85, 143-55; D.I. 127, Ex. 37 at 7-8). The NDA Products were the intellectual property of another company at the time. (D.I. 126, Ex. 23 at 72, 85).

Defendant did not disclose the NDA Product investors to Plaintiffs. (D.I. 123-1, Ex. 7 at 62-63, 186-93; D.I. 124, Ex. 11 at 31, 321; D.I. 126, Ex. 23 at 285, 290-91). In total, Defendant reimbursed the NDA Product investors over $340,000 directly from Plaintiffs' investment funds (*see generally*, D.I. 123-1, Exs. 8 at Adams CTT 0071589-99, Adams CTT 0071624-40, Adams CTT 0071641-655; D.I. 127, Ex. 37 at 7-8) and more than $1.1 million from the 5904 Account in 2016. (D.I. 127, Ex. 31).

### a.  Merger of CTT-NJ into CTT-DE

Without Plaintiffs' knowledge, Defendant solicited a $12.5 million investment in June 2016 (D.I. 123-1, Ex. 7 at 219:22-24; D.I. 127, Ex. 37 at 11) and a $7 million investment in September 2016 from non-parties to this case. (D.I. 127, Ex. 27 at 82-87). In connection with the

June 2016 investment, Defendant merged CTT-NJ into CTT-DE, completing the merger

documentation in March 2017 and backdating it to June 2, 2016. (*Id.*, Ex. 38).[5]

### C. MedCreations

CTT was also in the business of wholesaling prescription gels and creams for generic

pharmaceutical manufacturer Sandoz. (*Id.*, Ex. 43). Despite its initial apparent success in sales,

by September 30, 2016, CTT reported that the company owed over $4 million in accounts

payable to Sandoz. (D.I. 126, Ex. 23 at 314; D.I. 127, Ex. 43). At the end of 2016, CTT wrote off

the largest accounts receivable, $3.9 million from MedCreations, as uncollectable. (D.I. 127, Ex.

43). CTT subsequently defaulted on its obligations to Sandoz, leading to a lawsuit, and did not

continue a business relationship with the company. (D.I. 123-1, Ex. 7 at 161-62; D.I. 127, Ex.

50).

While serving as CTT's Executive Vice President, Plaintiff Adams investigated the

MedCreations receivable, finding that the MedCreations receivable had been "paid in full" prior

to delivery, based on Defendant's emails, MedCreations' purchase orders, and a copy of

MedCreations' bank statement proving that they had wired to CTT $1,951,560 on May 3, 2016,

and $1,901,520 on May 17, 2016. (D.I. 127, Ex. 44 at Adams CTT 0006938; D.I. 123-1, Ex. 7 at

21-22, 314-15). These amounts matched wires received into the 5904 Account. (D.I. 127, Ex. 44

at Adams CTT 0009010 ).

## II.   LEGAL STANDARD

A moving party is entitled to summary judgment where "the movant shows that there is

no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a). A fact in dispute is material when it "might affect the outcome of the

---

[5] CTT-NJ and CTT-DE are collectively referred to in this opinion as "CTT."

suit under the governing law" and is genuine "if the evidence is such that a reasonable jury could

return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986). "In considering a motion for summary judgment, a district court may not make

credibility determinations or engage in any weighing of the evidence; instead, the nonmoving

party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'"

*Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at

255). A court's role in deciding a motion for summary judgment is not to evaluate the evidence

and decide the truth of the matter but rather "to determine whether there is a genuine issue for

trial." *Anderson*, 477 U.S. at 249.

A party moving for summary judgment has the initial burden of showing the basis for its

motion and must demonstrate that there is an absence of a genuine issue of material fact. *Celotex

Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to

show that there is a "genuine issue for trial." *Id.* at 324. To withstand a properly supported

motion for summary judgment, the nonmoving party must identify specific facts and affirmative

evidence that contradict the moving party. *Anderson*, 477 U.S. at 250.

There is "no genuine issue as to any material fact" if a party "fails to make a showing

sufficient to establish the existence of an element essential to that party's case." *Celotex Corp.*,

477 U.S. at 322. "If reasonable minds could differ as to the import of the evidence," however,

summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250-51.

## III.    DISCUSSION

Plaintiffs style their motion as one for partial summary judgment.  It is really "partial."  It

does not seek to have any claim or defense resolved.  Plaintiffs' proposed order seeks an entry of

"[s]ummary judgment . . . on the elements of material misstatement and omission [and on the element of scienter] as those elements are necessary under Plaintiffs' claims."  (D.I. 120-1).

There are two relevant provisions of the summary judgment rule that are not usually at issue in summary judgment motions.  Rule 56(a) in its first sentence provides, "A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought."  Fed. R. Civ. P. 56(a). Rule 56(g) provides, "If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact – including an item of damages or other relief – that is not genuinely in dispute and treating the fact as established in the case."  Fed. R. Civ. P. 56(g).

The current format of these two rules dates from 2010.  The Committee Notes on Rules – 2010 Amendment provide, "The first sentence [of Rule 56(a)] is added to make clear at the beginning that summary judgment may be requested not only as to an entire case but also as to a claim, defense, or part of a claim or defense."  Fed. R. Civ. P. advisory committee's note. The Committee Notes further provide, "Subdivision (g) applies when the court does not grant all the relief requested by a motion for summary judgment.  It becomes relevant only after the court has applied the summary-judgment standard  . . . to each claim, defense, or part of a claim or defense, identified by the motion.  Once that duty is discharged, the court may decide whether to apply the summary-judgment standard to dispose of a material fact that is not genuinely in dispute."  *Id.* "If it is readily apparent that the court cannot grant all the relief requested by the motion, it may properly decide that the cost of determining whether some potential fact disputes may be eliminated by summary disposition is greater than the cost of resolving those disputes by other means, including trial.  Even if the court believes that a fact is not genuinely in dispute it may refrain from ordering that the fact be treated as established.  The court may conclude that it

is better to leave open for trial facts and issues that may be better illuminated by the trial of related facts that must be tried in any event." *Id.*

My instinctive reaction to Plaintiffs' motion is that I do not think that it seeks resolution of a "part of a claim or defense" as intended by the rule. Plaintiffs surely intend to put on testimony and evidence at trial not only about the two misrepresentations/omissions that they have raised in their motion but also about at least a substantial portion of the other misrepresentations/omissions for the four claims at issue. They need to do this, if for nothing else, in order to prove reliance. It is not as though the elements on which they seek summary judgment are some sort of stand-alone elements which, once resolved, can be cut out of the case or stipulated to in some sensible fashion so that a portion of the trial is no longer necessary.[6] Unless I am required to resolve Plaintiffs' motion, and I do not think that I am, any reasonable exercise of discretion would involve me deciding that Plaintiffs' motion is better left undecided because (1) deciding it will do nothing to shorten or simplify the trial issues, and (2) the jury will be better able to decide the issues of the case without some partial judicial imprimatur on a very narrow part of the case.[7]

### IV.    CONCLUSION

---

[6] For example, if Plaintiffs were asserting copyright infringement, it might make sense to resolve whether they own the copyrights through a partial summary judgment. *Cf. Latin Am. Music Co. v. Media Power Grp., Inc.*, 705 F.3d 34, 39-41 (1st Cir. 2013) (appeal whether trial court so resolved the issue).

[7] Before I decided that this was the best approach to this motion, I did give Plaintiffs' motion substantive consideration. At this point, the only item that I would consider granting partial summary judgment on is the "Sole Member" representations, which are undisputed and are material. But I would only do that if Plaintiffs were dropping the remainder of their misrepresentations and omissions case. After all, if I have granted judgment on the misstatements/omissions and materiality, any more evidence on those two elements is (or should be) cumulative.

For the reasons discussed above, I will deny Plaintiffs' Motion for Partial Summary

Judgment. (D.I. 120).

IT IS SO ORDERED this 11th day of May 2020.

_/s/ Richard G. Andrews_____
United States District Judge