IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MARK ADAMS, AV SELECT
INVESTMENTS, LLC, DR. GREGORY
SIMONIAN, WADE HARTMAN, and
FRANK EDWARD SMITH,

        Plaintiffs,

   v.

JOHN H. KLEIN,

        Defendant.

Civil Action No. 18-1330-RGA

MEMORANDUM OPINION

Gregory F. Fischer, COZEN O'CONNOR, Wilmington, DE; Michael B. de Leeuw, Matthew L. Elkin, Martin Bloor, COZEN O'CONNOR, New York, NY, Attorneys for Plaintiffs.

Andrew L. Cole, Bradley P. Lehman, COLE SCHOTZ, Wilmington, DE; Steven R. Klein, Rachel A. Mongiello, COLE SCHOTZ, Hackensack, NJ, Attorneys for Defendant.

May 12, 2020

/s/ Richard G. Andrews
**ANDREWS, UNITED STATES DISTRICT JUDGE:**

Before me is Plaintiff Mark Adams' Motion for Summary Judgment (D.I. 121). He seeks summary judgment on Defendant John Klein's counterclaim for tortious interference with a contract, which is Count II of Defendant's Answer.[1]

I have reviewed the parties' briefing (D.I. 122, 138, 145). For the reasons that follow, I will grant Plaintiff Adams' Motion for Summary Judgment.

## I. BACKGROUND

On June 1, 2014, Cambridge TT LLC ("CTT"), by and through its Managing Member, who was Klein, and Klein entered into an employment agreement. (D.I. 9 at 52, ¶ 92; D.I. 127, Ex. 24). It was amended on June 15, 2016. (*Id.*).

Adams met Klein in June 2014. (D.I. 123-1, Ex. 7 at 38:17-19). They discussed Adams investing in CTT. Klein told Adams that his funds would be wired into a CTT bank account and shown to a potential funder on a balance sheet and that his funds would be used to develop drugs and pay for New Drug Applications. (*Id.* at 49-51, 58; D.I. 126, Ex. 22). Klein represented to Adams that he was CTT's sole shareholder. (D.I. 123-1, Ex. 7 at 49-50). On October 16, 2014, Adams wired $581,250 to CTT's account at PNC Bank ("the 5904 Account") in exchange for either 3 or 6% of CTT. (*Id.*, Ex. 8, at Adams CTT 0071589; D.I. 139-1).[2] Over the next month, Klein disbursed two checks of $100,000 to himself from the account, along with a check of $134,733.29 to American Express, two checks of $50,000 and $10,000 to early investor Patrick

---

[1] The Amended Answer is at D.I. 79. It incorporates by reference the Counterclaims in the original Answer, which is at D.I. 9. The Counterclaim for tortious interference is set forth at pp. 52-53 of the Answer.

[2] Exhibit 8 is a document prepared by Adams in his capacity as CTT's acting CEO from records obtained from PNC Bank. This document includes a compilation of bank statements, cancelled checks, and wire instructions for the years 2011-2016 for the 5904 Account.

Dapuzzo, a $124,000 check to early investor Steven Shaw, and a check of $39,718 to the Borough of Alpine, New Jersey. (D.I. 123-1, Ex. 8 at Adams CTT 0071589-99).

In June 2016, CTT formally employed Adams as Executive Vice President, National Director of Sales and Marketing. (*Id.*, Ex. 7 at 55-56).

In May 2017, Adams sought a salary increase, but was refused by Klein, who told Adams that both he and his son did substandard work and were at risk of adverse employment consequences. (D.I. 139-1).

In June 2017, Klein appointed Adams to CTT's three-member Board of Managers. (D.I. 123-1, Ex. 7 at 313). The other two members were Klein and Marc Wasserman. From June to December 2017, Adams investigated Klein's conduct as CTT's CEO. (*Id.* at 355-56). Adams shared his conclusions in an email to Wasserman and others on December 14, 2017, finding that Klein (i) misrepresented CTT-NJ's debts to CTT-DE;[3] (ii) failed to disclose early CTT and NDA product investors; (iii) improperly merged CTT-NJ with CTT-DE, without formally recognizing Plaintiffs' CTT-NJ interests in CTT-DE, and backdating certain merger documents; (iv) did not file past due CTT-NJ tax returns; (v) misrepresented that he had invested $11 million into CTT and took a $500,000 bonus from CTT without authorization; (vi) misrepresented that a revenue generating asset belonged to CTT when Klein actually owned it personally through a Cayman Island entity; and (vii) destroyed the Sandoz relationship through fraudulent activities. (D.I. 127, Ex. 47). Wasserman, another CTT board manager, agreed with Adams' findings. (*Id.*, Ex. 25 at 169-71).

---

[3] CTT started life as a New Jersey entity but was later merged into a Delaware entity. The parties refer to the two entities as CTT-DE and CTT-NJ.

3

On December 14, 2017, Wasserman and Adams executed a Written Consent terminating Klein for "cause." (D.I. 127, Ex. 48). Notice of the termination was given to Klein on December 22, 2017. Adams became CTT's "interim" CEO following Klein's termination. (*Id*.).

## II.    LEGAL STANDARD

A moving party is entitled to summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact in dispute is material when it "might affect the outcome of the suit under the governing law" and is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255). A court's role in deciding a motion for summary judgment is not to evaluate the evidence and decide the truth of the matter but rather "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to show that there is a "genuine issue for trial." *Id.* at 324. To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. *Anderson*, 477 U.S. at 250.

There is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp.*, 477 U.S. at 322. "If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250-51.

### III. DISCUSSION

Adams argues that he is entitled to summary judgment on Klein's tortious interference with a contract counterclaim. (D.I. 122 at 25). Adams argues that the Court should grant summary judgment in his favor for any of four separate reasons: (i) Adams was justified in voting to terminate Klein's employment agreement for "cause," (ii) Adams did not act in bad faith or outside the scope of his employment, (iii) CTT did not breach the Employment Agreement by terminating Klein for "cause," and (iv) this cause of action is barred by the exculpation clause of the CTT-DE Amended Operating Agreement. (*Id.* at 25-26).

Klein contends that Adams' failure to preserve evidence relevant to Klein's counterclaim raises the possibility of spoliation sanctions precluding summary judgment and that disputes of material fact preclude summary judgment on the tortious interference claim. (D.I. 138 at 16, 21).

To establish tortious interference, Klein must show: "(1) there was a contract, (2) about which the particular defendant knew, (3) an intentional act that was a significant factor in causing the breach of contract, (4) the act was without justification, and (5) it caused injury." *WaveDivision Holdings, LLC v. Highland Capital Mgmt., L.P.*, 49 A.3d 1168, 1174 (Del. 2012).[4] "An officer or director may be held personally liable for tortious interference with a contract of the corporation if, and only if, said officer or director exceeds the scope of his agency in so doing." *Int'l Ass'n of Heat & Frost Insulators & Asbestos Workers Local Union 42 v. Absolute*

---

[4] There is no dispute that Delaware law applies to the counterclaim.

*Envtl. Servs., Inc.*, 814 F. Supp. 392, 400 (D. Del. 1993); *see Shearin v. E.F. Hutton Grp., Inc.*, 652 A.2d 578, 590 (Del. Ch. 1994) ("employees or directors of a contracting corporation cannot be held personally liable for inducing a breach of contract by their corporations when they act within their role" (citations omitted)).  This is consistent with Delaware law (and indeed, federal law) which generally stands for the proposition that a claim for breach of contract with an artificial entity lies with a suit for breach of contract against the entity, not the individuals who act on behalf of the entity.  "As a general rule, so far as personal liability on corporate contracts is concerned, officers of corporations are in the same position as agents of private individuals and are not liable on corporate contracts as long as they do not act and purport to bind themselves individually."  *Tekstrom, Inc. v. Savla*, 2006 WL 2338050, at *10 (Del. Super. Ct. July 31, 2006) (quoting *Brown v. Colonial Chevrolet Co.*, 249 A.2d 439 (Del. Super. Ct. 1968)); *see also* 6 Del. C. § 18-303 (stating that a manager of a limited liability company is generally not personally liable for the "liability of the limited liability company solely by reason of being a member or acting as a manager of the limited liability company").

### A.  Adams' Role in Terminating Klein

Adams maintains that he was justified in voting to terminate Klein for "cause." (D.I. 122 at 26). Adams asserts that he acted in his capacity as a CTT board member in voting to terminate Klein as CEO, and, as he did not exceed the scope of his authority in doing so, any alleged interference with the contract was privileged. (*Id.* at 27). He argues that CTT did not breach the Employment Agreement that Klein had with CTT because the agreement does not require CTT to identify cause for termination in writing. (*Id.* at 29).

Klein contends, "[T]here are genuine disputes as to whether Adams acted in good or bad faith, and whether he did so within the scope of his authority and agency as Klein's designee."

(D.I. 138 at 22).[5] Klein argues, "Adams acted outside the scope of his agency (and breach of his duty of loyalty) as Klein's designee on CTT's Board of Managers when he acted, covertly and in concert with Wasserman and the Breslows, to terminate Klein's employment, remove Klein as CEO and President of CTT, and take these positions for himself." (*Id.* at 24-25).[6]

As noted, an officer or director may be held personally liable for tortious interference with a contract of the corporation only if the officer or director exceeded the scope of his agency. *See, e.g.*, *Local Union 42*, 814 F. Supp. at 400. Klein argues that Adams exceeded the scope of his agency by failing to give Klein, who was CTT's controlling member and shareholder at the time, advance notice of the Board's decision to terminate his employment. (D.I. 138 at 24-26). I cannot agree.

Klein cites *VGS, Inc. v. Castiel*, 2000 WL 1277372 (Del. Ch. Aug. 31, 2000), *aff'd*, 781 A.2d 696 (Del. 2001) to argue that Adams breached his duty of loyalty to Klein (who appointed Adams to CTT's Board) by voting to terminate his employment by an unnoticed Written Consent rather than at a Board meeting. In *VGS*, the minority member and designee had wrested control

---

[5] The parties spend a certain amount of time arguing about whether there is a dispute about Adams' good faith. Neither party cites a case for the proposition that his good faith or bad faith makes a difference in determining whether he acted within the scope of his agency as a member of the Board of Managers of the contracting party. Clearly, one of the duties of any Board of Managers is to decide the status of the CEO.
    I think motive and therefore good faith/bad faith may be separately relevant to justification. "The defense of justification does not require that the defendant's proper motive be its sole or even its predomina[nt] motive for interfering with the contract. Only if the defendant's *sole* motive was to interfere with the contract will this factor support a finding of improper interference." *WaveDivision*, 49 A.3d at 1174.
    Nevertheless, assuming good faith/bad faith is relevant to the agency question, the only factual disputes Klein posits are (1) the inference that Adams bore some animus because he was turned down for a raise some seven months earlier, and (2) Adams was Klein's designee to the Board. The former raises no plausible suggestion of bad faith, and, the latter is irrelevant since Adams had no fiduciary duties to Klein in Klein's role as an employee.

[6] The Breslows had their own separate litigation with Klein, which has been resolved. See *Breslow v. Klein*, No. 18-cv-00908 (D. Del.) (filed Sept. 8, 2017 in the District of New Jersey).

of the LLC by unnoticed Written Consent to merge the LLC into a new corporation where the controlling member would have only a minority position and no board control.

      The holding in *VGS* has subsequently been limited to its factual circumstances, which are easily distinguishable. *See Klaassen v. Allegro Dev. Corp.*, 106 A.3d 1035, 1044 (Del. 2014). In *VGS*, the Court of Chancery found that the minority member and designee breached their duties of loyalty by using a flawed process to divest the controlling member of his board control and equity. 2000 WL 1277372, at *4-5. The process violated the "unique" structure of the LLC Agreement, which contemplated that the member with the majority equity interest in the LLC would be able to protect his interests. Delaware courts have not applied *VGS* in circumstances where an allegedly flawed Board vote resulted in a controlling shareholder and director losing his employment as the company's CEO. *See Klaassen*, 106 A.3d at 1044 (rejecting the argument that *VGS* and other earlier cases stood for the universal proposition that "a director who is also a shareholder or officer of a corporation is entitled to advance notice of any matter to be considered at a board meeting, that may affect that director's specific interests"); *see also OptimisCorp v. Waite*, 2015 WL 5147038, at *66 (Del. Ch. Aug. 26, 2015), *aff'd*, 137 A.3d 970 (Del. 2016).

      Although LLC managers owe each other fiduciary duties of loyalty, whereas corporate directors do not, I am not persuaded that Klein was entitled to advance notice of his removal from the company from Adams, such that Klein might preemptively remove his designee from the board and prevent his termination. The duty of loyalty does not extend to Klein in his capacity as an employee. *See Klaassen*, 106 A.3d at 1044; *OptimisCorp.*, 2015 WL 5147038, at *67. Thus, I will grant Plaintiff summary judgment on the issue of whether he acted outside of the scope of his agency in terminating Klein.

### B. CTT Breach of Employment Agreement

Section 3.2(d) of Klein's Employment Agreement with CTT defines cause as:

(1) "Employee's act or acts of dishonesty constituting an indictable or disorderly persons offense involving or resulting or intending to result directly or indirectly in personal enrichment at the expense of the Company (including, without limitation, acts of embezzlement, fraud or misappropriation); or (2) The commission by Employee of a felony or crime involving moral turpitude; or (3) Willful misconduct by Employee inimical to the interests of the Company's business . . . ; or (4) Any other material breach or attempted material breach of . . . this Agreement;

(D.I. 123-1, Ex. 24, at § 3.2). With respect to clause (4), Klein would be entitled to notice and a ten-day period to cure unless the "cause for termination is not capable of being cured." (*Id.*). "The determination of 'Cause' shall be determined by the managing director of the Company in his reasonable discretion." (*Id.*). Adams argues that "cause" for termination is satisfied because Klein engaged in fraud and embezzlement, failing to disclose earlier CTT investors and product investors,[7] and paying previous investors from Plaintiffs' investment funds. (D.I. 145 at 20). Given my decision that Adams was acting within the scope of his employment, I do not need to decide whether CTT had cause to terminate Klein as CEO (or perhaps, more deferentially, whether the Board of Managers was exercising reasonable discretion in terminating Klein for cause) and thus I do not decide whether CTT breached Klein's Employment Agreement.

### C. Exculpatory Clause

Adams argues that he cannot be liable for tortious interference under CTT-DE's Operating Agreement due to an exculpatory clause in the agreement. (D.I. 122 at 30). Klein disagrees. (D.I. 138 at 28). Klein argues that his claim against Adams for tortious interference

---

[7] As I point out in my order relating to the other pending summary judgment motion, it is undisputed that Klein lied to various investors when he told them that they would be the first investors in CTT, although he disputes the materiality of those lies.

9

with contract does not derive from Klein's interest as a "member" of CTT but rather is asserted in Klein's capacity as a former contract counter-party with and employee of CTT.[8] (*Id.*). Klein asserts that "[t]he exculpatory clause, by its terms, only applies to claims asserted by members in their capacity as members." (*Id.*).

The Operating Agreement provides that: "[n]o Member, Manager, or officer of the Company . . . shall be liable to any Member of the Company" for "any action taken . . . in good faith . . . with respect to the business and affairs of the company." (*Id.*, Ex. 34, at § 7.2). The provision is enforceable under Delaware law, which "enforces contractual provisions that eliminate the possibility of any tort liability short of actual fraud." *NAACO Indus., Inc. v. Applica Inc.*, 997 A.2d 1, 36 (Del. Ch. 2009); *see also Arby Partners V, L.P. v. F & W Acquisition LLC*, 891 A.2d 1032, 1061-64 (Del. Ch. 2006). By the language of the agreement, it appears that the exculpatory clause applies only to claims asserted by members in their capacity as members, or at least, that there is a genuine dispute about the scope of its application. I will deny summary judgment for Adams as to the argument that he is exculpated from liability under the company's Operating Agreement.

### D. Spoliation of Evidence

Klein also raises concerns regarding spoliation of evidence, alleging that Adams "at best failed to preserve, and at worst, destroyed or has concealed the contents of" a potentially relevant Gmail account, when Adams was aware of his duty to preserve relevant evidence. (D.I. 138 at 21). Sanctions for spoliation of electronically stored information (ESI) are governed by Rule 37 of the Federal Rules of Civil Procedure. *Air Prods. & Chems. v. Wiesemann*, WL 758417, *1 (D.

---

[8] I note that Klein previously portrayed himself on the other side of the member-employee divide, when asserting that Adams owed to him a duty of loyalty as co-members in an LLC.

Del. Feb. 27, 2017). The Court may take "curative measures" (including the application of an adverse inference) upon a showing that the other party was prejudiced or impose sanctions upon a showing that the party acted with intent, Fed. R. Civ. P. 37(e)(1)-(2), neither of which has been shown here. Courts will not impose sanctions for spoliation of ESI where it appears that the documents sought are still available from other sources. *See, e.g.*, *CIGNEX Datamatics, Inc. v. Lam Research Corp.*, WL 1118099, at *4 (D. Del. March 11, 2019).

Klein does not explicitly make a motion for sanctions under Rule 37. Plaintiff asserts that any relevant emails sent to or from the relevant account, which belonged to Adams' son, are otherwise available, as they were either forwarded to Adams' personal email account or sent to other parties. Without more, I do not find that an adverse inference is justified.

## IV.     CONCLUSION

For the reasons discussed above, I will grant Plaintiff Adams' Motion for Summary Judgment (D.I. 121). An accompanying order will be entered.